UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PETER ARAMINI and MARGRET ARAMINI,

                Plaintiffs,

     v.                                       **DECISION AND ORDER**

CSX TRANSPORTATION, INC.,                       11-CV-745S

                Defendant.

## I.  INTRODUCTION

Plaintiffs commenced this personal injury action by filing a Summons and Complaint in New York State Supreme Court against the County of Erie, City of Buffalo, and CSX Transportation, Inc. On September 2, 2011, CSX removed the action to this Court, arguing that the County and City were fraudulently joined in the suit. Subsequently, Plaintiffs stipulated to the County of Erie's dismissal (Docket Nos. 9, 12), and this Court dismissed the City of Buffalo as having been fraudulently joined (Docket No. 24). CSX is now the sole Defendant.

Presently before this Court is CSX's Motion for Summary Judgment. The motion is fully briefed and the Court has concluded there is no need for oral argument. For the reasons stated below, the motion is granted and the Complaint is dismissed.

## II. BACKGROUND

At all relevant times, Peter Aramini was employed at the City of Buffalo Sanitation Department in the position of garbage lifter. Docket No. 44-1, Exh. A at 7:9-9:23, 11:16-19. On May 1, 2010, in the course of his employment, Aramini was traveling on the

back of a City sanitation truck driven by another City of Buffalo employee, John Miceli. Def's Stmt[1] ¶¶ 2-3. The truck entered onto West Ferry Street, over which CSX railroad tracks pass via a supporting railroad bridge (the "Bridge"). Id. ¶¶ 4-5.

Prior to May 1, 2010, Eugene Kelsey, Training Officer for the City of Buffalo Sanitation Department, had prepared training materials and a posting instructing drivers and equipment operators not to drive under the bridge crossing West Ferry Street with any vehicle, and included directions for avoiding the Bridge. Docket No. 44-1 Exh. B at 20:15-21:6, 21:21-22:20, 24:7-25:12, 27:23-30:1. On May 1, Miceli nevertheless attempted to drive under the Bridge. The top of the sanitation truck struck the Bridge, bringing it to a sudden stop. Def's Stmt ¶ 6. Aramini was positioned at the rear of the truck on the driver's side, with his right arm through a shoulder-height steel handle mounted on the truck. When the impact occurred, Aramini's body swung forward while his wrist and hand remained through the handle. Docket No. 47 ¶¶ 26-27. He was taken by ambulance to St. Joseph's Hospital for an injury to his right wrist. Id. ¶¶ 32-34, Exh. B.

Sometime after the incident, Training Officer Kelsey spoke with driver Miceli, who stated that he knew he was not supposed to drive under the Bridge, but had forgotten to go the other way. Docket No. 44-1, Exh. B at 31:16-32:10. Aramini now alleges that the injuries he sustained on May 1, 2010 were due to CSX's negligence, and his wife Margret claims loss of consortium. The Complaint's only fact allegations relating to CSX's alleged negligence are that a "sign was not in a condition which would alert drivers upon West Ferry Street of the true height of the railroad bridge" and that CSX owns, uses, and

---

1 CSX's Statement of Undisputed Facts.

maintains the Bridge. Docket No. 1 ¶¶ 14, 23. Aramini later added, in response to CSX's interrogatories, that CSX was negligent in: operating a bridge with insufficient clearance, failing to inspect the bridge, failing to keep the bridge within its standard of efficiency from when it was first constructed, controlling and operating a structure known to be a nuisance, failing to post adequate warning to alert drivers of the true clearance of the bridge, failing to fulfill its duties under New York Railroad Law § 93, and controlling and operating a structure with clearance below the maximum legal limit. Docket No. 44-1 Exh. F at 15.

There is no dispute that CSX, a common carrier providing freight railroad transportation, owns the Bridge and the railroad tracks supported by the Bridge. Def's Stmt ¶ 11. CSX acquired the Bridge in 1999, as part of its purchase of certain Consolidated Rail Corporation ("Conrail") assets. CSX inspects the Bridge at least once a year, and maintains the structure of the Bridge. Id. ¶¶ 13, 16. In 2008, pursuant to Federal Railroad Administration policy, CSX adopted a Structure management Plan and the Plan was in effect at the time of the accident at issue. Id. ¶ 14. CSX inspected the Bridge in accordance with its Plan. Id. ¶ 15. Inspections for the three years preceding the accident (2007, 2008, 2009) indicate no serious deficiencies with the Bridge and no damage due to vehicle impact. Id. ¶ 17.

While CSX owns, inspects, and maintains the Bridge over West Ferry Street, the public street below is under the City of Buffalo's sole jurisdiction. Id. ¶ 22. CSX was not involved in West Ferry Street's design or construction, has no control over or rights in the street, including where it passes under the Bridge, and does not install or maintain signage indicating the amount of clearance for vehicles traveling on the street. Id. ¶¶

3

19-21. CSX seeks summary judgment dismissing the complaint on the ground that, as a matter of law, its purported acts or omissions do not implicate any legal duty pursuant to which it may be held liable.

In opposition to the motion, Aramini provides, inter alia, two photographs which he attests "accurately depict the overhead bridge crossing West Ferry Street and the posted clearance sign as they appeared on the day of the incident."[2] Docket No. 47 ¶ 31, Exh. A.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id. "An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment." Powell v. National Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (citation omitted). In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. Weinstock v. Columbia Univ., 224 F.3d 33, 40 (2d Cir. 2000).

---

2 The remainder of Mr. Aramini's evidence consists of his medical treatment records.

**B.  Operation, Inspection, and Maintenance of the Bridge**

CSX maintains that any claims regarding its operation, inspection, repair, and/or maintenance of the Bridge are preempted by federal law—specifically, the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. §§ 10101 et seq. and/or the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101, et seq. These Acts address, respectively, the construction, operation, and abandonment of rail lines (ICCTA) and safety in all areas of railroad operations (FRSA). 49 U.S.C. §§ 10105(b), 20101, 20106; Island Park, LLC v. CSX Transp., 559 F.3d 96, 102-03, 106 (2d Cir. 2009).

The preemption argument is now moot. As previously noted, the Complaint's sole fact allegation relating to CSX's purported liability is that a sign did not adequately alert drivers on West Ferry Street to the true height of the Bridge; there are no allegations relative to the condition of the Bridge structure. Although Aramini later asserted, in conclusory fashion during discovery, that CSX violated New York Railroad Law[3] and was otherwise negligent in operating, inspecting, and maintaining the Bridge, he has since admitted that CSX inspects the Bridge at least once a year, and that inspections for the three years preceding his accident revealed no serious deficiencies and no damage due to vehicle impact. Docket No. 46-2 ¶¶ 16-17. Consistent with these admissions, Aramini does not offer any testimony or evidence linking the physical condition of the Bridge to his injury. In other words, Aramini effectively has abandoned any claim he may have thought to pursue over the operation and physical condition of the Bridge. There is no claim to

---

3 This statute provides, in pertinent part, that: ["w]hen a highway passes under a railroad, the bridge and its abutments shall be maintained and kept in repair by the railroad corporation, and the subway and its approaches shall be maintained and kept in repair by the municipality having jurisdiction over and in which the same are situated." N.Y. R.R. Law § 93.

which a preemption analysis urged by CSX would apply.

## C.  The Posting of Clearance Signs

What CSX did not address in its preemption argument is the allegation that a clearance sign at the Bridge was inadequate or illegible.[4] Any claim relating to signage must be dismissed, it maintains, because railroads have no duty under state law to post or maintain bridge clearance signs. In response, Aramini urges that CSX has a statutory and/or common law duty to give notice of clearances at its bridges.

CSX points to New York's Vehicle and Traffic Law, which provides that:

> Each . . . legislative body of a city or a village shall cause signs to be erected to inform persons of the legal overhead clearance for all bridges and structures on highways under its jurisdiction. The legal clearance shall be one foot less than the measured clearance. The measured clearance shall be the minimum height to the bridge or structure measured vertically from the traveled portion of the roadway. On bridges or structures having fourteen feet or more of measured clearance, no such signs shall be required.

N.Y. Veh. & Traf. Law § 1640(d).

Despite this clear directive to municipalities, Aramini contends that Section 93 of New York Railroad Law—requiring railroad companies to maintain the framework and abutments of bridges that carry tracks over public highways (and vice versa)—imposes precisely the same legal duty on railroads, i.e., "to give adequate warning to travelers along the highway of a dangerous low underpass, regardless of whether the highway was constructed and maintained by the state or other government body." Docket No. 46-1 at 10. Aramini has provided no authority for his assertion that a statutory obligation to maintain and repair bridge structures includes a duty to erect signage, and his argument

---

4 Aramini attests that "[t]he overhead bridge had a white sign on it. It also appeared to have faded numbers written on it, but I was unable to read them." Docket No. 47 ¶ 29.

is contrary to New York jurisprudence.

In New York Central R.R. Co. v. Pender, town and county defendants argued that the railroad company that had constructed and maintained a bridge carrying a town highway over railroad tracks had a duty, pursuant to § 93, to erect signs indicating the weight capacity the bridge would safely carry. 303 N.Y. 651 (1951). New York's Court of Appeals reversed a judgment in favor of the municipalities finding that, under the Vehicle and Traffic Law, the duty to erect signs informing highway users of limitations fell to the municipality having jurisdiction over the highway. Id. at 652. A subsequent case addressed the precise duty at issue here; the posting of overhead clearance signs for bridges spanning highways. In Akers Motor Lines, Inc. v. New York, a tractor trailer traveling on a public street in Brooklyn, New York, struck a railroad overpass. 72 Misc. 2d 751, 339 N.Y.S.2d 514 (N.Y. Civ. Ct. 1972). The court dismissed the city's cross complaint against the railroad, finding that the city had a mandatory duty to post clearance signs for bridges on highways under its jurisdiction. Id. at 754-55. In granting the plaintiff judgment against the City of New York, the court noted:

> There appears a common plan or design in regulating traffic on bridges and on highways under bridges to compel cities, villages, towns and the State Department of Transportation to post overhead clearance and capacity signs. Such information is in the public interest. The obligation to post such signs is addressed to public officials. To construe "shall" in subdivision (d) of section 1640 as permissive only, violates reason and the statutory intent. There is an absence of ameliorating or qualifying language or showing of another purpose to believe that subdivision (d) of section 1640 is permissive only. The State Legislature used "shall" and intended "shall", not "may".

Id. at 755.

Indeed, when opposing the City of Buffalo's earlier motion to dismiss, Aramini

expressly noted that though an earlier New York statute had imposed a duty on railroad corporations to post overhead clearance signs, current law required that the City of Buffalo erect "a legible clearance sign on or near" the Bridge.[5] Docket No. 16 at 4; see N.Y. Veh. & Traf. Law § 1640; see also Akers Motor Lines, 72 Misc. 2d at 753 (pointing out the distinction between the two versions of the law).

Aramini next argues that a railroad may be held liable under a negligence theory when it "knows or should know of a problem with a clearance sign" erected by another. Docket No. 46-1 at 11-12. To establish a cause of action for negligence in New York, a plaintiff must prove: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Solomon ex rel. Solomon v. City of N.Y., 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 499 N.Y.S.2d 392 (1985); see, e.g., Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) (quoting Solomon, 66 N.Y.2d at 1027); DiBenedetto v. Pan Am World Serv., Inc., 359 F.3d 627, 630 (2d Cir. 2004) (same). If the plaintiff's evidence is insufficient as a matter of law to carry the plaintiff's burden of proof on even one of the three elements of the negligence cause of action by a preponderance of the admissible evidence, summary judgment must be entered against the plaintiff. Fed.R.Civ.P. 56(a), (e); see, e.g., Rothstein v. City of New York, 2011 U.S. Dist. LEXIS 83657, 2011 WL 3273473 (S.D.N.Y. July 29, 2011).

The threshold question of whether a duty is owed to a plaintiff is a question of law. See Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 585, 634 N.E.2d 189,

---

5 The City of Buffalo was dismissed from this action on the ground that, as a city employee injured in the course of his employment, New York's Workers' Compensation Law provides Aramini his exclusive remedy against the City. Aramini did not dispute that he had sought and received benefits from the City of Buffalo pursuant to the Workers' Compensation Law. Docket No. 24 at 4-8.

611 N.Y.S.2d 817 (1994) ("the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for judges to make prior to submitting anything to fact-finding or jury consideration" (citations omitted)); Gilson v. Metro. Opera, 5 N.Y.3d 574, 576-77, 841 N.E.2d 747, 807 N.Y.S.2d 588 (2005); Guest v. Hansen, 603 F.3d 15, 21 (2d Cir. 2010).

Aramini, relying on Ryan v. St. Johnsbury & L.C.R., 290 F.3d 350 (2d Cir. 1961), urges that "whether a railroad company knew or ought to have known of an error or problem with a clearance sign raise[s] an issue of negligence for the jury." Docket No. 46-1 at 12. In Ryan, the defendant railroad had constructed an underpass beneath its tracks to accommodate a Vermont state highway. Vermont statute, similar to New York, imposed a duty on the state to erect warning signs on its highways. The plaintiff, driving a tractor trailer with a height of 11'11", approached the bridge. Although the state had posted a sign indicating the clearance was 12'1", the roof of the tractor trailer collided with the bridge. When the bridge was measured after the accident, it was determined that frost had heaved the road and reduced the clearance to 11'10". The Second Circuit, reversing the trial court, held that the railroad's motion for a directed verdict should have been granted. The Court went on to explain that:

> We do not sustain [the railroad's] contention that the Vermont statutes with respect to warning signs relieved it as a matter of law from any responsibility . . . . [The state statutes] did not ban its communicating to the [state] any knowledge it had that the latter's sign overstated the clearances. Hence evidence that [the railroad] knew or ought to have known the clearance was less than announced would have raised an issue of negligence for the jury.

Id. at 352 (citation omitted) (emphasis supplied). A directed verdict was warranted, said the Court, because the plaintiff had presented no evidence as to how long the condition

had existed, or that the railroad knew or should have known of it. As such, there was no material issue to present to the jury.

Assuming, for purposes of this motion, that New York's statutes regarding warning signs do not relieve CSX of all possible responsibility here, Aramini, like plaintiff Ryan, fails to offer facts sufficient to meet his burden of showing that CSX had a common law duty here. As noted, Aramini attests that a sign on the Bridge "appeared to have faded numbers written on it, but I was unable to read them." He has offered no evidence that the driver of the truck, Miceli, was unable to read the sign, that the sign did not accurately state the overhead clearance, of the length of time the sign had been in its allegedly faded condition, or that CSX knew or should have known of the sign's condition. Because Aramini has not met his burden of proof on the duty element of his negligence claim by a preponderance of evidence, summary judgment is warranted.

### D. Loss of Consortium

"It is well settled under New York law that a claim for loss of consortium 'is a derivative action and, as such, its liability is dependent on the viability of a primary cause of action . . . .'" Jones v. United States, 408 F. Supp. 2d 107, 126 (E.D.N.Y. 2006) (quoting Panczykowski v. Laborers Int'l Union of N.A., Nos. 97-CV-0036A, 97-CV-0832A, 2000 WL 387602, at *14 (W.D.N.Y. Mar. 31, 2000) (citing Stander v. Orentreich, 165 Misc. 2d 530, 627 N.Y.S.2d 879, 884 (Sup. Ct. 1995)). Because Peter Aramini's claims against CSX fail, Margret Aramini's derivative claim also must be dismissed.

## IV.  CONCLUSION

For the reasons stated, Defendant CSX's motion for summary judgment dismissing the Complaint is granted.

## IV.   ORDERS

IT HEREBY IS ORDERED, that Defendant CSX's Motion for Summary Judgment (Docket No. 130) is GRANTED.

FURTHER, that the Clerk of Court is directed to enter judgment in accordance with this Decision and Order and close this case.


SO ORDERED.

Dated:   May 25, 2014
         Buffalo, New York

                                         /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                           Chief Judge
                                    United States District Court

11